FILED

September 19 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0082

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 230

JOHN O. MILLER,

Plaintiff and Appellant,

v.

PATRICK G. BEGLEY,

Defendant and Appellee.

FILED

SEP 19 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV 09-82
Honorable Ingrid Gustafson, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

John O. Miller (self-represented), Deer Lodge, Montana

For Appellee:

Penelope S. Strong, Attorney at Law, Billings, Montana

Submitted on Briefs: August 17, 2011

Decided: September 19, 2011

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 John O. Miller (Miller) appeals from an order of the Twenty-Second Judicial District Court, Carbon County, granting summary judgment to Patrick G. Begley (Begley) and dismissing Miller's claims against Begley.

¶2 The sole issue on appeal is whether the District Court erred in granting summary judgment to Begley.

## BACKGROUND

¶3 In 1991, Miller pled guilty to two counts of deliberate homicide. Attorney James Goetz (Goetz) defended Miller against the homicide charges. In 2004, Goetz represented Miller in a matter regarding Miller's parole restriction. Unhappy with Goetz's representation in the parole matter, Miller sued Goetz for breach of contract, breach of express warranty, and breach of the covenant of good faith and fair dealing.

¶4 With the assistance of his mother and brother, Miller arranged for Begley to represent him on a limited basis, mainly to obtain discovery for his claim against Goetz. The relationship between Miller and Begley deteriorated within months, and Begley withdrew from representing Miller. Ultimately, Goetz obtained summary judgment against Miller, and the case was dismissed.

¶5 Miller then filed the present lawsuit against Begley, alleging breach of contract (two counts), breach of the covenant of good faith and fair dealing, and fraudulent deceit. Begley moved for summary judgment, which the District Court granted on the basis that Begley had

reasonably assisted Miller with his claims against Goetz, and the dismissal of the Goetz claim was based on legal deficiencies unrelated to Begley's legal services.

¶6 Miller appeals.

## STANDARD OF REVIEW

¶7 This Court reviews a district court's summary judgment ruling de novo, applying the same M. R. Civ. P. 56(c) criteria as the district court applied. *Ternes v. St. Farm Fire & Cas. Co.*, 2011 MT 156, ¶ 18, 361 Mont. 129, 257 P.3d 352.

## DISCUSSION

¶8 *Whether the District Court erred in granting summary judgment to Begley.*

¶9 On appeal, Miller asserts genuine issues of material fact exist that preclude summary judgment on all of his claims against Begley. Specifically, Miller argues summary judgment on his breach of contract claims is not appropriate because he offered tangible evidence—affidavits from his mother and brother and recorded telephone conversations between himself and Begley—that Begley promised to pursue Miller's claims against Goetz and depose Goetz, but did not do so. Miller asserts his bad faith claim is not precluded by summary judgment because he demonstrated that although Begley eventually withdrew from representation, claiming the Goetz claim was without merit, Begley was aware of the facts of Miller's lawsuit against Goetz from the beginning and still agreed to provide services and accepted payment. Finally, Miller argues his deceit claim should survive summary judgment because the affidavits of his mother and brother demonstrate that while Begley promised

3

them he would depose Goetz, he had actually "covertly" met with Goetz's attorney and had agreed to waive all of Miller's discovery rights and forgo deposing Goetz.

¶10 When reasonable minds cannot differ, questions of fact can be determined as a matter of law on a motion for summary judgment. *Schmidt v. Wash. Contractors Group, Inc.*, 1998 MT 194, ¶ 6, 290 Mont. 276, 964 P.2d 34. The party moving for summary judgment bears the initial burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Ternes*, ¶ 18. We must view the evidence in a light most favorable to the party opposing summary judgment, and all reasonable inferences will be drawn in favor of that party. *Ternes*, ¶ 18. Once the moving party has met its initial burden, the burden shifts to the party opposing summary judgment to demonstrate substantial evidence exists, as opposed to mere denial, speculation, or conclusory statements, raising a genuine issue of material fact. *Ternes*, ¶ 18.

¶11 We conclude the District Court did not err in granting summary judgment to Begley. Miller's breach of contract claims against Begley are based upon his allegation that Begley agreed to perform six specific legal services.[1] However, as the District Court noted, the record shows Begley only agreed to assist Miller with discovery and, therefore, retained the right to exercise his professional judgment. Letters from Begley to Miller and/or his family are instructive on the scope of the parties' agreement. For instance, Begley wrote in a July

---

[1] Miller alleges Begley promised to (1) review the entire case file for Miller's lawsuit against Goetz; (2) prepare and submit affidavit testimony of Miller and his mother and brother; (3) prepare, serve, and submit requests for admission and interrogatories from Goetz; (4) depose Goetz; (5) amend Miller's lawsuit against Goetz to include theories of legal malpractice and misrepresentation; and (6) represent and defend Miller at any summary judgment proceedings.

4

23, 2008, letter: "Our agreement was and still remains [that] I would provide limited representation for purposes of assisting [Miller] with discovery and depositions." The record demonstrates the parties did not have an express agreement that Begley conduct six specific services, and affidavits from Miller's mother and brother are not sufficient to meet Miller's burden of establishing the existence of genuine issues of material fact. *See Sherrard v. Prewett*, 2001 MT 228, ¶ 15, 306 Mont. 511, 36 P.3d 378 (conclusory statements are insufficient to raise genuine issues of material fact).

¶12 In addition, Miller has failed to demonstrate genuine issues of material fact exist regarding his bad faith claim. Although Miller claims Begley led Miller and his family on, the record demonstrates Begley repeatedly informed Miller and his family that Miller's claims lacked merit, were unlikely to succeed, and were a waste of resources. Miller, apparently fixated upon procuring Goetz's deposition and related discovery, ignored Begley's warnings and advice. We agree with the District Court that no reasonable person could interpret Begley's conversations with Miller as supporting a finding that Begley made misrepresentations to Miller in an attempt to swindle his family out of money.

¶13 Similarly, Miller has failed to set forth evidence that precludes summary judgment on his claim Begley deceived him. Contrary to Miller's assertion that Begley deceived him about obtaining Goetz's deposition, the record demonstrates Begley indicated to Miller that deposing Goetz might be futile as he felt "[the district court] was moved by the argument that's written by [Goetz] stating that, hey, there is no genuine issue of material fact." Begley

5

further elaborated: "I strongly believe that the judge is going to rule on issues that are not even close to anything that Goetz is going to say. He's going to rule on the fact, he, he's hammered on me three points of law today." Miller's claim that Begley deceitfully promised to depose Goetz is merely a self-serving assertion, which is unsupported by the record. *See Sherrard*, ¶ 15.

## CONCLUSION

¶14 Miller has failed to demonstrate any genuine issues of material fact exist that preclude summary judgment in the present case.

¶15 Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Justice Jim Rice, concurring in part and dissenting in part.

¶16 With regard to Miller's claim for fraudulent deceit, I agree with the District Court's conclusion, referenced in ¶ 12 of the Court's Opinion, that "[n]o reasonable person could interpret [the evidence] to support a finding that Begley made misrepresentations to Miller to swindle money in attorney's fees from Miller." Thus, I would affirm the entry of summary judgment on the fraud claim.

¶17 Regarding the breach of contract claims, the Court reasons, as the District Court did, that Miller did not produce sufficient evidence to establish, for summary judgment purposes, that the parties had an express agreement that Begley would conduct six specific services. While I can agree with this conclusion in regard to an agreement for "six specific services," I believe Miller produced sufficient evidence to establish that Begley orally agreed to complete specific discovery work, which he then failed to complete as agreed.

¶18 The District Court noted that "[b]oth parties acknowledge Begley agreed to assist Miller with discovery in his case against Goetz, his prior attorney." Specifically, Miller's complaint alleged that Begley contracted to "Prepair [sic], Serve and Submit written discovery in the form of requests for Admission and Interrogatories from defendant James Goetz for Summary Judgment Proceedings on behalf of Plaintiff John O. Miller" and also to "Prepair [sic] take and Submit deposition testimony . . . from defendant James H. Goetz for Civil Cause No. DV-07-361B for Summary Judgment Proceedings." These were two of the six services Miller alleged Begley agreed to undertake. Miller submitted

7

the affidavits of his mother and brother which aver that Begley personally told them he would perform these two services, as well as his own affidavit swearing that Begley discussed that with Miller as well.

¶19     As additional support, Miller subpoenaed from the Department of Corrections the recording of telephone conversations between him and Begley, which were transcribed by a third party.[1] The transcript included the following statements by the parties:

> Begley:  What I can do is I can tell you that the, you hired me to get the discovery.  The discovery is being provided and it will be answered by Goetz.  And that was the understanding that we have, and I'm going to make sure that the court is aware of our understanding and in the event that they try to do something and then we'll go forward with a motion to compel.  We're also going to be moving to suspend judgment until the discovery is completed.
>
> .     .     .     .     .
>
> Miller:  So you're, you're promising to me right now that we're going to get that discovery.
>
> Begley:  John, I'm promising that I'm going to be submitting the discovery to Mr. Goetz, and I have been promised that Goetz is going to fill out that discovery.  I make no other promises.
>
> Miller:  Well, and you'll compel and we'll, we'll be able to compel him if he doesn't answer.
>
> Begley:  If he fails to answer, we will be able to compel.
>
> .     .     .     .     .

---

[1] The third party, a secretarial service, provided a certification that the transcription of the telephone conversation as set forth on the disks provided by Miller was true and accurate to the best of the transcriber's ability.  The accuracy of the transcription has not been contested or the use of the evidence challenged, although Begley asks that the entirety of Miller's brief be stricken.

Miller: so I'm going to get me discovery even though we, we're passed the deadline. I shouldn't worry about it.

Begley: That's correct.

. . . . .

Begley: And so then, now I can't promise you what his answer is going to be. That would be foolish.

Miller: But you can, but you're telling me we, you're telling me we'll be able to compel him legally in court, in Salvagni's court to answer them.

Begley: Yeah, if he doesn't answer or if he fails to answer, yes, that's right.

Despite Begley's assurances that he had agreed to obtain discovery from Goetz and would do so, even by compulsion if necessary, he didn't. Instead, after initially giving notice of Goetz's deposition, Begley, according to Miller's affidavits and exhibits, cancelled the deposition in favor of Goetz's participation in an informal meeting. According to the letter of August 18, 2008, from Todd Stubbs, Goetz's counsel, to Begley, outlining the arrangement:

> Mr. Goetz will make himself available on August 29, 2008 to field your questions regarding Mr. Miller's sentencing in 1991. The meeting will take place in Bozeman at a time and place of Mr. Goetz's choosing. Mr. Goetz reserves the right to decline to answer any questions he deems irrelevant, inappropriate, or otherwise.
> This meeting is informal and will be convened for the sole purpose of attempting to settle this matter. Accordingly, any communications made during this meeting are inadmissible under Mont. R. Evid. 408.

> . . . . .

> Please also be advised that Mr. Goetz is cancelling your client's deposition set for August 21, 2008.

9

Then, as a sanction for Begley's failure to answer Miller's discovery requests after being ordered to do so, the District Court entered an order which deemed as admitted Miller's requests for admission that were unanswered by Begley.[2] That sanction had the effect of attributing various statements and actions to Begley, including his statement that, if the case did not settle, obtaining Goetz's deposition would be necessary before proceeding to the summary judgment hearing, and his admission that, at the time he filed notice to depose Goetz on Miller's behalf, Begley had already agreed with Stubbs to cancel the deposition.

¶20 Though often misfiring in these proceedings, Miller marshaled, in my view, sufficient evidence to establish for purposes of summary judgment that Begley orally contracted with Miller to complete specific discovery tasks and submit the discovery in the lawsuit, but that Begley failed to follow through as agreed. This was an agreement for limited representation, a practice recently approved by Court rules. While the District Court was undoubtedly correct in concluding that Miller's claims against Goetz "had essentially no chance of success"—even without regard to Begley's alleged deficiencies—Miller could still obtain a judgment against Begley for the legal fees paid, under his breach of contract theory. I would reverse the entry of summary judgment on Miller's contract claims and remand for further proceedings.

---

[2] The discovery abuse was not one-sided. Begley's motion to declare Miller a vexatious litigant was partially granted by the District Court, wherein it stated "[i]t appears Miller has attempted to cause Begley an undue hardship by attempting to abuse the discovery process and now attempts to burden Begley and this Court with excessive and unnecessary motions . . . ." This ruling is not challenged on appeal.

10

_____

Justice

11

DA 11-0082

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 230

JOHN O. MILLER,

      Plaintiff and Appellant,

  v.

PATRICK G. BEGLEY,

      Defendant and Appellee.

FILED

SEP 19 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV 09-82
Honorable Ingrid Gustafson, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        John O. Miller (self-represented), Deer Lodge, Montana

    For Appellee:

        Penelope S. Strong, Attorney at Law, Billings, Montana

Submitted on Briefs:  August 17, 2011

Decided:  September 19, 2011

Filed:

                          Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    John O. Miller (Miller) appeals from an order of the Twenty-Second Judicial District Court, Carbon County, granting summary judgment to Patrick G. Begley (Begley) and dismissing Miller's claims against Begley.

¶2    The sole issue on appeal is whether the District Court erred in granting summary judgment to Begley.

## BACKGROUND

¶3    In 1991, Miller pled guilty to two counts of deliberate homicide. Attorney James Goetz (Goetz) defended Miller against the homicide charges. In 2004, Goetz represented Miller in a matter regarding Miller's parole restriction. Unhappy with Goetz's representation in the parole matter, Miller sued Goetz for breach of contract, breach of express warranty, and breach of the covenant of good faith and fair dealing.

¶4    With the assistance of his mother and brother, Miller arranged for Begley to represent him on a limited basis, mainly to obtain discovery for his claim against Goetz. The relationship between Miller and Begley deteriorated within months, and Begley withdrew from representing Miller. Ultimately, Goetz obtained summary judgment against Miller, and the case was dismissed.

¶5    Miller then filed the present lawsuit against Begley, alleging breach of contract (two counts), breach of the covenant of good faith and fair dealing, and fraudulent deceit. Begley moved for summary judgment, which the District Court granted on the basis that Begley had

2

reasonably assisted Miller with his claims against Goetz, and the dismissal of the Goetz claim was based on legal deficiencies unrelated to Begley's legal services.

¶6    Miller appeals.

## STANDARD OF REVIEW

¶7    This Court reviews a district court's summary judgment ruling de novo, applying the same M. R. Civ. P. 56(c) criteria as the district court applied. *Ternes v. St. Farm Fire & Cas. Co.*, 2011 MT 156, ¶ 18, 361 Mont. 129, 257 P.3d 352.

## DISCUSSION

¶8    *Whether the District Court erred in granting summary judgment to Begley.*

¶9    On appeal, Miller asserts genuine issues of material fact exist that preclude summary judgment on all of his claims against Begley. Specifically, Miller argues summary judgment on his breach of contract claims is not appropriate because he offered tangible evidence—affidavits from his mother and brother and recorded telephone conversations between himself and Begley—that Begley promised to pursue Miller's claims against Goetz and depose Goetz, but did not do so. Miller asserts his bad faith claim is not precluded by summary judgment because he demonstrated that although Begley eventually withdrew from representation, claiming the Goetz claim was without merit, Begley was aware of the facts of Miller's lawsuit against Goetz from the beginning and still agreed to provide services and accepted payment. Finally, Miller argues his deceit claim should survive summary judgment because the affidavits of his mother and brother demonstrate that while Begley promised

3

them he would depose Goetz, he had actually "covertly" met with Goetz's attorney and had agreed to waive all of Miller's discovery rights and forgo deposing Goetz.

¶10    When reasonable minds cannot differ, questions of fact can be determined as a matter of law on a motion for summary judgment. *Schmidt v. Wash. Contractors Group, Inc.*, 1998 MT 194, ¶ 6, 290 Mont. 276, 964 P.2d 34. The party moving for summary judgment bears the initial burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Ternes*, ¶ 18. We must view the evidence in a light most favorable to the party opposing summary judgment, and all reasonable inferences will be drawn in favor of that party. *Ternes*, ¶ 18. Once the moving party has met its initial burden, the burden shifts to the party opposing summary judgment to demonstrate substantial evidence exists, as opposed to mere denial, speculation, or conclusory statements, raising a genuine issue of material fact. *Ternes*, ¶ 18.

¶11    We conclude the District Court did not err in granting summary judgment to Begley. Miller's breach of contract claims against Begley are based upon his allegation that Begley agreed to perform six specific legal services.[1] However, as the District Court noted, the record shows Begley only agreed to assist Miller with discovery and, therefore, retained the right to exercise his professional judgment. Letters from Begley to Miller and/or his family are instructive on the scope of the parties' agreement. For instance, Begley wrote in a July

---

[1] Miller alleges Begley promised to (1) review the entire case file for Miller's lawsuit against Goetz; (2) prepare and submit affidavit testimony of Miller and his mother and brother; (3) prepare, serve, and submit requests for admission and interrogatories from Goetz; (4) depose Goetz; (5) amend Miller's lawsuit against Goetz to include theories of legal malpractice and misrepresentation; and (6) represent and defend Miller at any summary judgment proceedings.

4

23, 2008, letter: "Our agreement was and still remains [that] I would provide limited representation for purposes of assisting [Miller] with discovery and depositions." The record demonstrates the parties did not have an express agreement that Begley conduct six specific services, and affidavits from Miller's mother and brother are not sufficient to meet Miller's burden of establishing the existence of genuine issues of material fact. *See Sherrard v. Prewett*, 2001 MT 228, ¶ 15, 306 Mont. 511, 36 P.3d 378 (conclusory statements are insufficient to raise genuine issues of material fact).

¶12 In addition, Miller has failed to demonstrate genuine issues of material fact exist regarding his bad faith claim. Although Miller claims Begley led Miller and his family on, the record demonstrates Begley repeatedly informed Miller and his family that Miller's claims lacked merit, were unlikely to succeed, and were a waste of resources. Miller, apparently fixated upon procuring Goetz's deposition and related discovery, ignored Begley's warnings and advice. We agree with the District Court that no reasonable person could interpret Begley's conversations with Miller as supporting a finding that Begley made misrepresentations to Miller in an attempt to swindle his family out of money.

¶13 Similarly, Miller has failed to set forth evidence that precludes summary judgment on his claim Begley deceived him. Contrary to Miller's assertion that Begley deceived him about obtaining Goetz's deposition, the record demonstrates Begley indicated to Miller that deposing Goetz might be futile as he felt "[the district court] was moved by the argument that's written by [Goetz] stating that, hey, there is no genuine issue of material fact." Begley

5

further elaborated: "I strongly believe that the judge is going to rule on issues that are not even close to anything that Goetz is going to say. He's going to rule on the fact, he, he's hammered on me three points of law today." Miller's claim that Begley deceitfully promised to depose Goetz is merely a self-serving assertion, which is unsupported by the record. *See Sherrard*, ¶ 15.

## CONCLUSION

¶14 Miller has failed to demonstrate any genuine issues of material fact exist that preclude summary judgment in the present case.

¶15 Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Justice Jim Rice, concurring in part and dissenting in part.

¶16 With regard to Miller's claim for fraudulent deceit, I agree with the District Court's conclusion, referenced in ¶ 12 of the Court's Opinion, that "[n]o reasonable person could interpret [the evidence] to support a finding that Begley made misrepresentations to Miller to swindle money in attorney's fees from Miller." Thus, I would affirm the entry of summary judgment on the fraud claim.

¶17 Regarding the breach of contract claims, the Court reasons, as the District Court did, that Miller did not produce sufficient evidence to establish, for summary judgment purposes, that the parties had an express agreement that Begley would conduct six specific services. While I can agree with this conclusion in regard to an agreement for "six specific services," I believe Miller produced sufficient evidence to establish that Begley orally agreed to complete specific discovery work, which he then failed to complete as agreed.

¶18 The District Court noted that "[b]oth parties acknowledge Begley agreed to assist Miller with discovery in his case against Goetz, his prior attorney." Specifically, Miller's complaint alleged that Begley contracted to "Prepair [sic], Serve and Submit written discovery in the form of requests for Admission and Interrogatories from defendant James Goetz for Summary Judgment Proceedings on behalf of Plaintiff John O. Miller" and also to "Prepair [sic] take and Submit deposition testimony . . . from defendant James H. Goetz for Civil Cause No. DV-07-361B for Summary Judgment Proceedings." These were two of the six services Miller alleged Begley agreed to undertake. Miller submitted

7

the affidavits of his mother and brother which aver that Begley personally told them he would perform these two services, as well as his own affidavit swearing that Begley discussed that with Miller as well.

¶19    As additional support, Miller subpoenaed from the Department of Corrections the recording of telephone conversations between him and Begley, which were transcribed by a third party.[1] The transcript included the following statements by the parties:

> Begley:  What I can do is I can tell you that the, you hired me to get the discovery.  The discovery is being provided and it will be answered by Goetz.  And that was the understanding that we have, and I'm going to make sure that the court is aware of our understanding and in the event that they try to do something and then we'll go forward with a motion to compel.  We're also going to be moving to suspend judgment until the discovery is completed.
>
>                                 .   .   .   .   .
>
> Miller:  So you're, you're promising to me right now that we're going to get that discovery.
>
> Begley:  John, I'm promising that I'm going to be submitting the discovery to Mr. Goetz, and I have been promised that Goetz is going to fill out that discovery.  I make no other promises.
>
> Miller:  Well, and you'll compel and we'll, we'll be able to compel him if he doesn't answer.
>
> Begley:  If he fails to answer, we will be able to compel.
>
>                                 .   .   .   .   .

---

[1] The third party, a secretarial service, provided a certification that the transcription of the telephone conversation as set forth on the disks provided by Miller was true and accurate to the best of the transcriber's ability.  The accuracy of the transcription has not been contested or the use of the evidence challenged, although Begley asks that the entirety of Miller's brief be stricken.

8

Miller: so I'm going to get me discovery even though we, we're passed the deadline. I shouldn't worry about it.

Begley: That's correct.

. . . . .

Begley: And so then, now I can't promise you what his answer is going to be. That would be foolish.

Miller: But you can, but you're telling me we, you're telling me we'll be able to compel him legally in court, in Salvagni's court to answer them.

Begley: Yeah, if he doesn't answer or if he fails to answer, yes, that's right.

Despite Begley's assurances that he had agreed to obtain discovery from Goetz and would do so, even by compulsion if necessary, he didn't. Instead, after initially giving notice of Goetz's deposition, Begley, according to Miller's affidavits and exhibits, cancelled the deposition in favor of Goetz's participation in an informal meeting. According to the letter of August 18, 2008, from Todd Stubbs, Goetz's counsel, to Begley, outlining the arrangement:

> Mr. Goetz will make himself available on August 29, 2008 to field your questions regarding Mr. Miller's sentencing in 1991. The meeting will take place in Bozeman at a time and place of Mr. Goetz's choosing. Mr. Goetz reserves the right to decline to answer any questions he deems irrelevant, inappropriate, or otherwise.
> This meeting is informal and will be convened for the sole purpose of attempting to settle this matter. Accordingly, any communications made during this meeting are inadmissible under Mont. R. Evid. 408.

> . . . . .

> Please also be advised that Mr. Goetz is cancelling your client's deposition set for August 21, 2008.

Then, as a sanction for Begley's failure to answer Miller's discovery requests after being ordered to do so, the District Court entered an order which deemed as admitted Miller's requests for admission that were unanswered by Begley.[2] That sanction had the effect of attributing various statements and actions to Begley, including his statement that, if the case did not settle, obtaining Goetz's deposition would be necessary before proceeding to the summary judgment hearing, and his admission that, at the time he filed notice to depose Goetz on Miller's behalf, Begley had already agreed with Stubbs to cancel the deposition.

¶20 Though often misfiring in these proceedings, Miller marshaled, in my view, sufficient evidence to establish for purposes of summary judgment that Begley orally contracted with Miller to complete specific discovery tasks and submit the discovery in the lawsuit, but that Begley failed to follow through as agreed. This was an agreement for limited representation, a practice recently approved by Court rules. While the District Court was undoubtedly correct in concluding that Miller's claims against Goetz "had essentially no chance of success"—even without regard to Begley's alleged deficiencies—Miller could still obtain a judgment against Begley for the legal fees paid, under his breach of contract theory. I would reverse the entry of summary judgment on Miller's contract claims and remand for further proceedings.

---

[2] The discovery abuse was not one-sided. Begley's motion to declare Miller a vexatious litigant was partially granted by the District Court, wherein it stated "[i]t appears Miller has attempted to cause Begley an undue hardship by attempting to abuse the discovery process and now attempts to burden Begley and this Court with excessive and unnecessary motions . . . ." This ruling is not challenged on appeal.

10

_____
Justice